Filed 6/12/25; certified for publication 7/3/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | B341335, B341338 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>G.M.,<br><br>Defendant and Appellant. | Los Angeles County<br>Super. Ct. No. 21CCJP00340 |

APPEAL from orders of the Superior Court of Los Angeles County, Juan M. Valles, Juvenile Court Referee. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals from the juvenile court's orders denying her Welfare and Institutions Code section 388 petition and terminating parental rights to her daughter C.R. (born December 2020). Father is not a party to this appeal. Mother does not challenge the merits of the court's rulings. Rather, mother solely contends we must conditionally reverse the order terminating her parental rights because the Los Angeles County Department of Children and Family Services' (DCFS) initial inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA), and the California statutes implementing ICWA (Welf. & Inst. Code, § 224 et seq.) (Cal-ICWA), was deficient.[1] We affirm.

## BACKGROUND

### 1. *Summary of C.R.'s dependency case*

Mother gave birth to C.R. in December 2020, less than a month before she turned 16 years old. The father was mother's adult boyfriend. Mother herself was a minor dependent of the juvenile court. The Department had filed a section 300 petition on her behalf in January 2020.[2]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. "[W]e use the term 'Indian' throughout to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) We intend no disrespect.

[2] Mother was detained from maternal grandmother in March 2020. In July 2020 the court sustained the petition's allegations that maternal grandmother could not properly care for or supervise mother due to mother's behavioral issues, including running away to be with her adult boyfriend, who was abusive. Maternal grandmother's reunification services were terminated in October 2021.

Mother, who was pregnant, had been placed in a short-term residential program (STRP). Mother had a "history of running away/being AWOL" from her placement to be with father. Father abused mother, had forced mother to have sex with him, and reportedly used methamphetamines. In August 2020, the court issued a ten-year criminal protective order protecting mother from father, but she continued to run away to be with him.

Shortly after C.R.'s birth in December 2020, the Department received a report of general neglect of C.R. The reporting party expressed a concern that mother would "AWOL" and take the baby to see father and that mother "lack[ed] the capacity to protect [C.R.] from witnessing future abuse from father onto minor mother." These concerns, reports of mother and father having ongoing arguments over the phone, and an incident where C.R. fell, led the Department to detain C.R. from mother in January 2021. On January 22, 2021, the Department filed a section 300 petition on C.R.'s behalf based on mother's and father's history of violent altercations, and mother's failure to enforce—and father's failure to comply with—the criminal protective order, as well as father's drug abuse.

At the January 27, 2021 detention hearing, the court detained C.R. from parents. The court gave the Department discretion to place C.R. with "any appropriate, assessed" maternal relative, other than maternal grandmother. The Department assessed both maternal aunt and maternal cousin for C.R.'s possible placement. Maternal aunt decided against placement, and the Department could not immediately place C.R. with maternal cousin.

Mother entered a waiver of rights and no-contest plea at the May 21, 2021 adjudication and disposition hearing. The

court sustained the petition, declared C.R. a dependent, and removed her from parents' custody. The court granted mother reunification services. C.R. remained in foster care.

The court continued mother's reunification services several times. The Department again asked maternal cousin and aunt about becoming C.R.'s caregiver, but they declined. Mother continued to run away from her STRP to be with father. On September 20, 2023, the court terminated mother's reunification services.

On September 24, 2024, the court denied the section 388 petition mother had filed earlier, asking for more reunification services and for a bonding study. At the same hearing, the court terminated mother's parental rights to C.R. Mother filed separate notices of appeal from the court's orders. On mother's motion, we consolidated the appeals under case number B341338 for purposes of briefing, argument, and decision.[3]

## 2. *ICWA inquiry and findings*

When the Department social worker first visited mother and C.R. on December 24, 2020, mother denied Native American ancestry. The Department's January 22, 2021 detention report— referring to mother's earlier denial of Native American ancestry —stated ICWA "does not apply." On January 26, 2021, mother filed a Parental Notification of Indian Status form (ICWA-020) stating, "I have no Indian ancestry as far as I know."

A year earlier—as part of mother's dependency case— maternal grandmother filed, on January 22, 2020, an ICWA-020

---

[3]    Mother's appeal from the court's denial of her section 388 petition had been assigned case number B341335.

form also stating, "I have no Indian ancestry as far as I know."[4] Maternal grandfather was deceased. That same day, the juvenile court found it had "no reason to know" mother "is an Indian Child, as defined under ICWA." The court acknowledged maternal grandmother's ICWA-020 form was "signed and filed," and ordered her to keep the Department, her attorney, and the court aware of any new information relating to possible ICWA status. The court noted it made its no-ICWA finding "after inquiry of [maternal grandmother] regarding her knowledge of any possible American Indian ancestry on [maternal grandfather's] side." The Department's jurisdiction report noted the court's January 22, 2020 finding. The report also stated that, on January 29, 2020, maternal grandmother told the Department she didn't have contact information for maternal grandfather's family, and she didn't believe he had any American Indian heritage.

At the January 27, 2021 detention hearing in C.R.'s case,[5] the juvenile court confirmed with mother that her statement in the ICWA-020 form was correct. The juvenile court found

---

[4] We granted the Department's unopposed request that we take judicial notice of documents from mother's juvenile dependency court case file (Case No. 20CCJP00371A), including maternal grandmother's January 22, 2020 ICWA-020 form; the court's January 22, 2020 minute order; and the first two (redacted) pages of the Department's jurisdiction report filed February 28, 2020.

[5] C.R.'s dependency case was assigned to the same department as mother's case, but a different judicial officer was presiding over that department by the time C.R.'s case was filed.

it did "not have a reason to know that ICWA applies as to [m]other."[6]  Before detaining C.R., the court—over mother's objection—admitted into evidence three reports from mother's dependency case.  One of those reports—the report for the January 15, 2021 section 366.21, subdivision (e) status review hearing—stated the court, on January 22, 2020, had found ICWA did not apply in mother's dependency case (status review report).

The court admitted the same three reports in evidence at the May 21, 2021 adjudication hearing.  At mother's request, the court again admitted the status review report into evidence at permanency review hearings in October 2022.  At the September 2023 hearing, the court admitted three reports from mother's case into evidence, including the status review report, on the Department's request.

At the initial section 388/366.26 hearing on June 5, 2024, the court found it had "no reason to know or believe" that C.R.'s case was governed by ICWA.[7]  At the continued hearing on September 24, 2024, the court noted it had "reviewed the file" and "continu[ed] to find no reason to know or believe that this case is governed by [ICWA]."  The court also noted it had read both the Department's and mother's exhibits and was "very mindful of mother's own dependency history."

---

[6]     The Department's subsequent reports repeated this finding.

[7]     Mother claims no error as to the Department's ICWA inquiry of father's relatives.  In brief, father filed an ICWA-020 form denying Indian ancestry.  Paternal great grandfather had no knowledge of Indian ancestry in the family, and family members told paternal great grandmother there was none.

**DISCUSSION**

**1.** *Applicable law and standard of review*

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' " (*Dezi C., supra*, 16 Cal.5th at pp. 1128–1129, quoting 25 U.S.C. § 1902.) An " 'Indian child' " is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 903(4); former § 224.1, subd. (a) [adopting federal definition].)[8]

Under Cal-ICWA, the juvenile court and DCFS "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child." (*Dezi C., supra*, 16 Cal.5th at pp. 1131–1132, quoting § 224.2, subd. (a).) "This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)  Only the initial duty is at issue here.

"The [D]epartment's duty arises when a report of abuse or neglect is made and/or when the county takes the child into its temporary custody." (*In re Kenneth D.* (2024) 16 Cal.5th 1087,

---

[8]     Section 224.1 was amended, effective September 27, 2024. (Stats. 2024, ch. 656, § 2.)  We refer to the definitions in effect during mother's earlier hearings.

1099 (*Kenneth D.*).)  This initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).)  Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); former § 224.1, subd. (c) [adopting federal definition].)  And "on the first appearance upon a petition, 'the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' " (*Kenneth D.*, at p. 1099, quoting § 224.2, subd. (c).)

The juvenile court may find ICWA does not apply to a child's proceeding if it finds DCFS's "inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child."  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134; § 224.2, subd. (i)(2).)  The juvenile court's finding that ICWA does not apply thus " ' "implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." ' "  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence.  (§ 224.2, subd. (i)(2) [juvenile court's finding that ICWA does not apply to the proceedings is "subject to reversal based on sufficiency of the evidence"]; see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005 (*Ezequiel G.*) [reviewing juvenile court's finding

that it had no reason to know a child is an Indian child for substantial evidence but reviewing decision that ICWA inquiry was adequate for abuse of discretion], disapproved on another ground in *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18; *Dezi C.,* at p. 1134 [declining to decide applicable standard of review].)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra*, 16 Cal.5th at p. 1141, quoting *Ezequiel G., supra*, 81 Cal.App.5th at p. 1005.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*Kenneth D., supra*, 16 Cal.5th at pp. 1101–1102.) Our high court thus has held, "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error." (*Dezi C.*, at p. 1141.)

## 2.    *Initial inquiry*

Mother contends the Department's ICWA inquiry was inadequate because the record does not indicate the Department interviewed maternal relatives about C.R.'s potential Indian ancestry, specifically, maternal grandmother, maternal aunt, and maternal cousin. The Department's reports relating to C.R.'s case show it asked mother, father, and paternal relatives about possible Indian ancestry, all of whom denied having any. As mother notes, the Department was in contact with maternal aunt —mother's sister—and maternal cousin, but there is no record

9

of the Department having asked them about C.R.'s potential Indian ancestry. We also acknowledge there is no record of the Department having asked maternal grandmother about the family's potential Indian ancestry *in C.R.'s dependency case.*

However, the Department and the court had questioned maternal grandmother about both her and deceased maternal grandfather's Indian ancestry during *mother's* dependency case, only a year before C.R.'s case began. The undisputed evidence shows maternal grandmother denied Indian ancestry in her ICWA-20 form and again when questioned by the court about it. She also told the Department she didn't believe maternal grandfather (mother's father) had any Indian ancestry and had no contact information for any of his relatives, as he had been deceased for some time.

Mother's dependency case was ongoing at the time C.R.'s case began. Both cases were assigned to the same dependency court department. Moreover, records from mother's dependency case were introduced and admitted into evidence in C.R.'s case at several hearings, albeit not for the purpose of establishing ICWA did not apply. Nevertheless, the status review report containing the court's earlier January 2020 finding that ICWA did not apply to mother's case was among the records admitted into evidence and—as the Department argues—was before the court when it found ICWA did not apply to C.R.'s case. Accordingly, this is not a situation where the Department is relying on evidence showing it made its ICWA inquiry *after* the juvenile court had issued its no-ICWA finding. (Cf. *Kenneth D., supra*, 16 Cal.5th at pp. 1096, 1100–1101, 1107 [appellate court could not consider evidence of postjudgment inquiry of father's and paternal grandmother's tribal heritage to conclude failure to conduct a proper inquiry was

harmless].)  Moreover, in *Kenneth D.*, the child welfare agency and court never inquired into the father's Indian ancestry before the court terminated parental rights.  (*Id.* at pp. 1095–1096.)  Here, both the Department and the court asked mother and maternal grandmother about their potential Indian ancestry long before the September 24, 2024 hearing.  And, as the Department also notes, the same attorney represented mother in both her own and C.R.'s cases, and the same attorney represented the Department in mother's case—at least in 2021 —and in C.R.'s case.  In other words, everyone knew maternal grandmother had denied Indian ancestry and that the court already had found it had no reason to know mother was an Indian child under ICWA.

As the Department and the court already had inquired of maternal grandmother—and the court had found ICWA did not apply to mother—the court reasonably could conclude there was no reason to duplicate inquiry efforts as to mother's side of the family by asking maternal grandmother about her potential Indian ancestry yet again.  (See *Dezi C., supra*, 16 Cal.5th at p. 1140 [compliance with ICWA early in the proceedings "avoid[s] . . . duplicative efforts"].)  The court also reasonably could find mother's sister (maternal aunt) would not have had any more information about the family's potential Indian ancestry than their own mother (maternal grandmother) had.  Similarly, given maternal grandmother's denial of Indian ancestry, the court reasonably could conclude asking maternal cousin about C.R.'s Indian ancestry was unnecessary.  (See *Ibid.* [reversal is not required where "every possible extended family member has not been asked about the child's Indian ancestry"].)  Nor has mother identified any other maternal relatives who would have

11

information about the family's possible Indian ancestry superior to maternal grandmother's knowledge.  (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [department "is not required to 'cast about' for information or pursue unproductive investigative leads"].)

Accordingly, we agree with the Department that the juvenile court's finding that ICWA did not apply to C.R.'s case was based on a well-developed record demonstrating substantial evidence supported its finding:  maternal grandmother repeatedly denied Indian ancestry in mother's case; maternal grandfather was deceased and maternal grandmother had no contact information for his family; and mother repeatedly denied Indian ancestry in C.R.'s case.  In the unusual circumstances presented here, we thus conclude the court did not abuse its discretion in impliedly finding the Department made an adequate inquiry into C.R.'s potential Indian ancestry under ICWA and Cal-ICWA, and substantial evidence supported the court's finding that ICWA did not apply.

## DISPOSITION
We affirm the juvenile court's September 24, 2024 orders.

                                    EGERTON, J.

We concur:


        EDMON, P. J.



        CODY, J.*

---

*        Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/3/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | B341338, B341335 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 21CCJP00340 ORDER CERTIFYING FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Plaintiff and Respondent, | |
| v. | |
| G.M., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter, filed on June 12, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.                    EDMON, P. J.                    CODY, J.*

_____

\*      Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.